**CONSOLIDATED PACIFIC ENGINEER-ING, INC., Appellant,**

v.

**GREATER ANCHORAGE AREA BOR-OUGH for and on Behalf of the GREAT-ER ANCHORAGE AREA BOROUGH SCHOOL DISTRICT, and Locher Company, Appellees.**

No. 2538.

Supreme Court of Alaska.

April 29, 1977.

Rehearing Denied May 19, 1977.

Irving Bertram and Kenneth P. Jacobus of Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

Leroy J. Barker of Robertson, Monagle, Eastaugh & Bradley and M. Sheila Gallagher, Anchorage, for appellee Greater Anchorage Area Borough.

Karl L. Walter, Jr., of Groh, Benkert & Walter, Anchorage, for appellee Locher Co.

Before BOOCHEVER, C. J., and RABI-NOWITZ, CONNOR, ERWIN and BURKE, JJ.

CONNOR, Justice.

In this appeal we consider whether the superior court has jurisdiction to order the consolidation of two arbitrations which have questions of law or fact in common. In this instance one party objects to the consolidation. The agreements to arbitrate say nothing concerning consolidation.

In 1972 and 1973, the Greater Anchorage Area Borough (GAAB) entered contracts with Consolidated Pacific Engineering, Inc. (Consolidated Pacific) to design, and Locher Company (Locher) to construct, a Career Center building for the GAAB School District. Each contract required claims or disputes arising out of the contract to be submitted to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.[1]

On October 12, 1973, Locher notified Consolidated Pacific that it could not obtain

---

1. The arbitration provision in the contract between the Greater Anchorage Area Borough and Consolidated Pacific read as follows:

"All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be

certain metal-faced panels specified in the Career Center plans. Locher's letter stated:

". . . we wish to advise you that to our knowledge there is no product currently manufactured which meets the requirements of the specifications."

After the Career Center was completed, Locher submitted a claim for additional compensation of $286,495.42 for the damages which resulted from specification of the unobtainable panels in the plans drawn by Consolidated Pacific. After reviewing the claim, Consolidated Pacific, acting in its capacity as supervisor of the construction, denied the additional compensation based on a determination that the delays were caused by Locher's failure to carry out its contract obligation to obtain city approval for materials which were in fact available.

On October 2, 1974, after Consolidated Pacific had denied Locher's claim, Locher filed a demand for arbitration against the Borough. On December 16, 1974, the Borough filed a demand for arbitration against Consolidated. In its demand the Borough maintained that either Locher itself or Consolidated Pacific was responsible for the unexpected costs incurred by Locher.

The Borough sought consolidation of the two arbitrations. The American Arbitration Association advised the Borough, Locher and Consolidated Pacific that the Association required the written consent of all three to the proposed consolidated arbitration. Locher agreed to the Borough's request for consolidation. Consolidated Pacific did not file a consent. Nevertheless, by January, 1975, the Association had come

to believe that Consolidated Pacific had consented to consolidation of the arbitrations, apparently as a result of communications between the Association and attorneys for the Borough and for Locher.

On January 28, 1975, the Association notified the three parties that

"This will acknowledge all parties' consent to add Consolidated Pacific Engineers, et al as a third party to the above captioned matter."

From January 28, 1975, until April 9, 1975, the Association, the Borough, and Locher all believed that Consolidated Pacific intended to participate in consolidated arbitration. All communications from the Association during this period of time referred to the arbitration by the names of all three parties, and all were sent to the attorney for Consolidated Pacific as well as those for the Borough and Locher.

On April 9, 1975, with the arbitration hearing scheduled for April 14, 1975, Consolidated Pacific notified the Association that it did not consider itself a party to the arbitration. At this point the Association discovered that it had not in fact received written consent to the consolidation from Consolidated Pacific, and so the Association notified Locher and the Borough that it no longer considered Consolidated Pacific to be a party to the arbitration.

On April 15, 1975, the Borough filed a complaint against Locher and Consolidated Pacific to compel consolidated arbitration. Locher agreed to the consolidation in its answer to the complaint. The Borough's Motion for Order to Compel Consolidated Arbitration was heard on short notice by

decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law."

The arbitration provision in the contract between the Greater Anchorage Area Borough and Locher Company read as follows:

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, with respect to the Architect's decisions on matters relating to artistic effect, and except for claims

which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.7, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Judge James K. Singleton on April 23, 1975. On April 28, the court ordered consolidation of the two arbitrations. Two days later the court filed an opinion elaborating its reasons for ordering consolidation. Judgment was entered accordingly on May 21, 1975. Consolidated Pacific has appealed. The consolidated arbitration has been stayed pending appeal.

No provision in Alaska's statutes or court rules expressly either permits or prohibits consolidation of arbitrations. Our legislature has adopted the Uniform Arbitration Act, AS 09.43.010 *et seq.*, but it is silent on this question. Neither of the contracts at issue in this case mentions the possibility of consolidation, nor do the Construction Industry Arbitration Rules which both contracts incorporate by reference. The parties, of course, draw conflicting inferences from this silence. The GAAB agrees with the trial court's conclusion that it has jurisdiction by implication, while Consolidated Pacific contends that the trial court is left without jurisdiction. Locher has changed its position and has filed a brief in opposition to consolidation.

Courts in other states have sharply divided over the question before us. The courts of New York have consistently held that they have power to order consolidation of related arbitrations even where there is not an identity of parties unless the consolidation would substantially prejudice any of the parties. In *Symphony Fabrics Corp. v. Bernson Silk Mills, Inc.*, 12 N.Y.2d 409, 240 N.Y.S.2d 23, 190 N.E.2d 418 (1963), the Court of Appeals relied upon statutes which defined arbitration to be a "special proceeding" and gave the courts discretion to order consolidation of "special proceedings." The court did not change its position, however, when a revision of the statutes eliminated the explicit statutory authorization for consolidated arbitration. *Chariot Textiles Corp. v. Wannalancit Textile Co.*, 18 N.Y.2d 793, 275 N.Y.S.2d 382, 221 N.E.2d 913 (1966), adopting the dissenting opinion below, 21 A.D.2d 762, 250 N.Y.S.2d 493, 494–95 (1964); *accord, In Re Vigo Steamship Corp.*, 26 N.Y.2d 157, 309 N.Y.S.2d 165, 257 N.E.2d 624, *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970).

In *Grover-Dimond Associates v. American Arbitration Assn.*, 297 Minn. 324, 211 N.W.2d 787 (1973), the Supreme Court of Minnesota was confronted with a case like the instant case, in which consolidation of owner-architect and owner-builder arbitrations was sought. Minnesota, like Alaska, had no statute speaking to the question of consolidated arbitration. The court found the New York position to be persuasive.

These cases note that courts have jurisdiction to enforce agreements to arbitrate, then conclude that they thus are empowered to regulate the method of enforcement. Consolidated arbitration, they point out, tends to be less costly and time-consuming than separate arbitrations, and also eliminates the risk of conflicting awards. An arbitration contract which prohibits consolidation must be enforced. Conversely, the absence of such an agreement persuades them to support consolidation.

Other courts have held that they are without jurisdiction to order consolidated arbitration over the objection of a party. *E. g. Stop & Shop Companies v. Gilbane Building Co.*, 364 Mass. 325, 304 N.E.2d 429 (1973); *J. Brodie & Son, Inc. v. George A. Fuller Co.*, 16 Mich.App. 137, 167 N.W.2d 886 (1969); *Hudik-Ross, Inc. v. 1530 Palisade Avenue Corp.*, 131 N.J.Super 159, 329 A.2d 70 (1974); *Wm. C. Blanchard Co. v. Beach Concrete Co.*, 121 N.J.Super. 418, 297 A.2d 587 (1972). Arbitration is strictly a matter of contract, they reason, one which is never imposed upon parties by the courts against their wishes. The parties should be allowed to conduct their arbitration in the manner they have established by agreement, free of judicial interferences.

██ We are persuaded by the latter view. We have made clear in the past that the public policy of Alaska strongly favors arbitration. *Anchorage Medical & Surgical Clinic v. James*, 555 P.2d 1320, 1321–22 (Alaska 1976); *University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132, 1138 (Alaska 1974); *Nizinski v. Golden Val-*

*ley Electric Assn., Inc.*, 509 P.2d 280, 283 (Alaska 1973). However, those same decisions have emphasized that the courts may not alter the arbitration terms the parties have inserted in their contract. Here, nothing is said in the contract with reference to consolidation. The court is thus confronted with a question of contract interpretation. In interpreting the contract, we look to the reasonable expectations of the parties. Here, by the terms of their agreement, the parties specified that the arbitration would be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

█ It appears that the Arbitration Association has had a long-established policy of not approving consolidation without the written consent of all parties. We believe that one entering into a contract such as the one at issue here would reasonably expect that consolidation could only take place with such written consents. For this reason, we reject the invitation to permit consolidated arbitration by analogy to Civil Rule 42(a), which permits consolidation of civil actions with common questions of law or fact.[2] If the parties wish to provide for the possibility of consolidated arbitration in their contracts, the courts will, of course, give effect to their decision. If the parties

to separate contracts all consented to consolidated arbitration, the arbitral award would be subject to judicial confirmation and enforcement. But however sound they may consider consolidated arbitration to be as a matter of policy, courts are not empowered to direct parties to undertake it when one of them objects.[3] "The law now favors arbitration with a minimum of court interference." *Nizinski, supra.*

It follows that the decision of the superior court was in error, and must be reversed. This decision makes it unnecessary for us to consider Consolidated Pacific's second point on appeal, concerning the award of attorney's fees made by the trial court.

REVERSED.

ERWIN, Justice, dissenting.

I dissent and would affirm the decision of the trial court. I believe the decisions of New York[1] and Minnesota[2] embody the better reasoned view and should be adopted as the rule in Alaska.

In my opinion, the courts of Alaska have the power to order consolidation of arbitration proceedings even in the absence of statutory authorization in order to avoid duplication of effort, expense and litigation.[3] Courts have statutory authority

---

**2.** Federal decisions ordering consolidated arbitration pursuant to Federal Rule of Civil Procedure 42(a) are not apposite. *E. g. Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 974–75 (2d Cir. 1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *Robinson v. Warner*, 370 F.Supp. 828 (D.R.I.1974). Federal Rule 81(a)(3) states that the federal rules are to govern proceedings under the Federal Arbitration Act, except to the extent inconsistent with that statute. There is no analogous provision in the Alaska civil rules which would permit application of our Rule 42 to arbitration.

**3.** There are also policy considerations militating against unconsented-to consolidation. A party with a fairly simply claim might be put considerable additional delay, expense, and substantive prejudice if his claim were arbitrated as part of a complex arbitration with many parties and many issues.

**1.** *Materials International v. Manning Fabrics, Inc.*, 46 A.D.2d 627, 359 N.Y.S.2d 812 (1974); *In re Vigo Steamship Corp.*, 26 N.Y.2d 157, 309 N.Y.S.2d 165, 257 N.E.2d 624, cert. denied 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Chariot Textiles Corp. v. Wannalancit Textile Co.*, 18 N.Y.2d 793, 275 N.Y.S.2d 382, 221 N.E.2d 913 (1966); *Symphony Fabrics Corp. v. Bernson Silk Mills, Inc.*, 12 N.Y.2d 409, 240 N.Y.S.2d 23, 190 N.E.2d 418 (1963).

**2.** The Supreme Court of Minnesota adopted the New York view in *Grover-Dimond Assoc. v. American Arbitration Ass'n*, 297 Minn. 324, 211 N.W.2d 787 (1973). Like the case at bar, *Grover-Dimond* involved disputes between a building owner and its contractor and between the owner and its architect.

**3.** See generally *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974), wherein this court held that contracts should be construed liberally in favor of arbitrability. See also *Nizinski v. Golden Valley Elec. Ass'n*, 509 P.2d 280 (Alaska 1973).

to review arbitration proceedings.[4] The concept of limited review of arbitration awards adopted by this court[5] is rendered impotent by permitting conflicting decisions in two arbitration disputes involving identical issues. The doctrines of res judicata and collateral estoppel are designed to prevent such inconsistent results in the case of multiple, related lawsuits, and consistent results are similarly important in arbitration cases.

While I recognize that arbitration is a creature of contract, the procedure advocated herein would not affect the rights of the parties as reflected in their contracts, except to provide a logical method by which to recognize and apply those rights.

## ORDER ON REHEARING

1. In its petition for rehearing appellee Greater Anchorage Area Borough urges that because appellant drew the contract in question, the contract should be construed against appellant. That principle should not be resorted to when other means of ascertaining the reasonable expectations of the parties are available, as they were here. This does not, therefore, present an adequate ground for rehearing.

2. The case of *Polshek & Associates v. Bergen County Ironworks*, 142 N.J.Super. 516, 362 A.2d 63 (1976), does not convince us that the two earlier New Jersey cases cited in the opinion herein lack persuasive force. Rehearing will not be granted as to this question.

3. Appellee asserts that the reference at page 255 of the opinion herein to the policy of the American Arbitration Association (of not approving consolidation without the written consent of the parties) is not supported by the record. We note that the record contains (R.18) a letter from the

regional director of the Association which evinces this policy. We find no reason to grant rehearing on this basis.

4. See Alaska's version of the Uniform Arbitration Act, AS 09.43.010 *et seq.*

5. *Anchorage Medical and Surgical Clinic v. James,* 555 P.2d 1320 (Alaska 1976).